IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

_____
                                    )
LAWRENCE MONTALBO,                  )
                                    )
                    Plaintiff,      )
                                    )
v.                                  ) Civ. No. 16-00306 ACK-RLP
                                    )
CAROLYN W. COLVIN, Acting           )
Commissioner of Social Security,    )
                                    )
                    Defendant.      )
_____)


ORDER REVERSING THE DECISION OF THE COMMISSIONER OF SOCIAL
SECURITY TO DENY PLAINTIFF SUPPLEMENTAL SOCIAL SECURITY INCOME
AND REMANDING FOR FURTHER PROCEEDINGS

     For the reasons set forth below, the Court REVERSES

the decision of the Commissioner and REMANDS to the ALJ for

further administrative proceedings consistent with this Order.

BACKGROUND

     On March 13, 2013, Plaintiff Lawrence Montalbo

("Montalbo") protectively filed an application for Supplemental

Social Security Income ("SSI"), alleging disability beginning on

January 1, 2010.[1]  AR 181.  The application was initially denied

on May 10, 2013, and denied again upon reconsideration on

December 20, 2013.  AR 88, 92.  Montalbo then requested a

_____
[1] At the hearing held before the ALJ, Montalbo amended his
disability onset date to December 1, 2012.  AR 36; see also
Opening Br. at 6.

- 1 -

hearing before an Administrative Law Judge ("ALJ"), which was held on January 6, 2015.  AR 20.

On January 30, 2015, the ALJ issued his written decision finding Montalbo was not disabled.  AR 20-28.  Montalbo filed a request with the Appeals Council to review the ALJ's decision on March 18, 2015.  AR 15.  The Appeals Council denied his request, finding no reason to review the ALJ's decision, and adopted the ALJ's decision as the final decision of the Commissioner on May 11, 2016.  AR 1-3.

Montalbo filed his complaint on June 10, 2016 seeking a review of the denial of his application for SSI benefits.  ECF No. 1.  On October 18, 2016, Montalbo filed his opening brief ("Opening Br.").  ECF No. 14.  Defendant, the Acting Commissioner of Social Security Carolyn W. Colvin ("Commissioner") filed her answering brief on December 5, 2016 ("Ans. Br.").  ECF No. 15.  Montalbo filed his reply brief on December 20, 2016 ("Reply Br.").  ECF No. 16.

The Court held a hearing on Monday, January 30, 2017 regarding Montalbo's requested review of the Commissioner's decision.

### STANDARD

A district court has jurisdiction pursuant to 42 U.S.C. § 405(g) to review final decisions of the Commissioner of Social Security.[2]

A final decision by the Commissioner denying Social Security disability benefits will not be disturbed by the reviewing district court if it is free of legal error and supported by substantial evidence.  See 42 U.S.C. § 405(g); Dale v. Colvin, 823 F.3d 941, 943 (9th Cir. 2016) (reviewing a district court's decision de novo).  Even if a decision is supported by substantial evidence, it "will still be set aside if the ALJ did not apply proper legal standards."  See Gutierrez v. Comm'r of Soc. Sec., 740 F.3d 519, 523 (9th Cir. 2014).

In determining the existence of substantial evidence, the administrative record must be considered as a whole, weighing the evidence that both supports and detracts from the Commissioner's factual conclusions.  See id.  "Substantial evidence means more than a scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Id.  "If the evidence can reasonably support either affirming or reversing,

---

[2] 42 U.S.C. § 1383(c) (3) incorporates the judicial review standards of 42 U.S.C. § 405(g), making them applicable to claims for supplemental security income.

the reviewing court may not substitute its judgment for that of the Commissioner." Id. (internal citation and quotation omitted). Rather, courts "leave it to the ALJ to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record." Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1098 (9th Cir. 2014).

## DISCUSSION

"To establish a claimant's eligibility for disability benefits under the Social Security Act, it must be shown that: (a) the claimant suffers from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months; and (b) the impairment renders the claimant incapable of performing the work that the claimant previously performed and incapable of performing any other substantial gainful employment that exists in the national economy." Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999); 42 U.S.C. § 423(d)(2)(A).  A claimant must satisfy both requirements in order to qualify as "disabled" under the Social Security Act.  Tackett, 180 F.3d at 1098.

### I.   The SSA's Five-Step Process for Determining Disability

The Social Security regulations set forth a five-step sequential process for determining whether a claimant is

- 4 -

disabled.  Dominguez v. Colvin, 808 F.3d 403, 405 (9th Cir. 2014); see 20 C.F.R. § 416.920(a)(4).  "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." Ukolov v. Barnhart, 420 F.3d 1002, 1003 (9th Cir. 2005) (citations omitted in original); see 20 C.F.R. § 416.920(a)(4).  The claimant bears the burden of proof as to steps one through four, whereas the burden shifts to the Commissioner for step five.  Tackett, 180 F.3d at 1098.

At step one, the ALJ will consider a claimant's work activity, if any.  20 C.F.R. § 416.920(a)(4)(i).  If the ALJ finds the claimant is engaged in substantial gainful activity, it will determine that the claimant is not disabled, regardless of the claimant's medical condition, age, education, or work experience.  20 C.F.R. § 416.920(b).  Substantial gainful activity is work that is defined as both substantial – i.e. work activity involving significant physical or mental activities – and gainful – i.e. work activity done for pay or profit.  20 C.F.R. § 404.1572.  If the ALJ finds that the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two.  Tackett, 180 F.3d at 1098.

Step two requires that the ALJ consider the medical severity of the claimant's impairments.  20 C.F.R. § 416.920(a)(4)(ii).  Only if the claimant has an impairment or

combination of impairments that "significantly limits [his] physical or mental ability to do basic work activities" will the analysis proceed to step three.  20 C.F.R. § 416.920(c).  If not, the ALJ will find the claimant is not disabled and the analysis stops.  20 C.F.R. § 416.920(a)(4)(ii).

The severity of the claimant's impairments is also considered at step three.  20 C.F.R. § 416.920(a)(4)(iii). Here, the ALJ will determine whether the claimant's impairments meet or equal the criteria of an impairment specifically described in the regulations.  Id.; see also 20 C.F.R. Part 404, Subpart P, App. 1.  If the impairments meet or equal these criteria, the claimant is deemed disabled and the analysis ends. 20 C.F.R. § 416.920(a)(4)(iii).  If not, the analysis proceeds to step four.  20 C.F.R. § 416.920(e).

Step four first requires that the ALJ determine the claimant's residual functional capacity.  Id.  Residual functional capacity is defined as the most the claimant can still do in a work setting despite his physical and mental limitations.  20 C.F.R. § 416.945(a)(1).  In assessing a claimant's residual functional capacity, the ALJ will consider all of the relevant evidence in the claimant's case record regarding both severe and non-severe impairments.  20 C.F.R. § 416.945.  This assessment is then used to determine whether the claimant can still perform his past relevant work.  20 C.F.R. §

- 6 -

416.920(e).  Past relevant work is defined as "work that [the claimant has] done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it."  20 C.F.R. § 416.960(b)(1). The ALJ will find that the claimant is not disabled if he can still perform his past relevant work, at which point the analysis will end.  Otherwise, the ALJ moves on to step five.

In the fifth and final step, the ALJ will once again consider the claimant's residual functional capacity, as well as his age, education, and work experience, in order to determine whether the claimant can perform other work.  20 C.F.R. § 416.920(a)(4)(v).  Here, the Commissioner is responsible for providing "evidence that demonstrates that other work exists in significant numbers in the national economy that [the claimant] can do."  20 C.F.R. § 416.960(c)(2).  If the claimant is unable to perform other work, he is deemed disabled; if he can make an adjustment to other available work, he is considered not disabled.  20 C.F.R. § 416.920(g)(1).

II.  **The ALJ's Decision**

a. **Steps One, Two, and Three**

The ALJ found that at step one, Montalbo had not engaged in substantial gainful activity since the date of the application, and at step two, that he suffered from three severe impairments: degenerative disc disease of the lumbar spine,

status post fusion, and Hepatitis C.  AR 22.  At the third step,
the ALJ found that these impairments did not meet one of the
listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.
AR 23.  Montalbo agrees with the findings the ALJ made at these
steps.  Opening Br. at 1.

### b. Steps Four and Five

Moving to steps four and five, the ALJ determined
Montalbo's residual functional capacity to be:

> lift and carry 20 pounds occasionally and 10
> pounds frequently; stand and/or walk 4 hours
> total in an 8-hour workday, but not more
> than 30 minutes at a time, after which he
> needs to get off his feet for 5 minutes,
> after which he can the [sic] return to
> standing and walking, and he needs a
> medically hand-held device for extended
> ambulation of a city block or more; sit 6
> hours in an 8-hour workday, but he needs to
> make a brief body adjustment every 30
> minutes while staying at his workstation;
> push and pull on an unlimited basis aside
> from as limited by lifting and carrying;
> occasionally climb ramps and stairs but
> never ladders, ropes, or scaffolds; and
> occasionally balance, stoop and crouch but
> never kneel or crawl.

AR 24.  Based on this RFC, the ALJ determined at step 4 that
Montalbo is unable to perform any past relevant work.  AR 25-26.
Montalbo agrees with the ALJ's conclusion that he is unable to
perform past relevant work.  Opening Br. at 1.  However, he
asserts that the ALJ's RFC finding is not grounded in
substantial evidence, and therefore the ALJ erred in concluding

at step 5 that Montalbo is not disabled because there is other work he can perform.  Opening Br. at 11.

In making its RFC finding, the ALJ summarized Montalbo's testimony regarding his symptoms.  AR 24-25.  In particular, the ALJ noted that Montalbo appeared at the hearing with a cane, which the ALJ stated Montalbo admitted was not medically prescribed; and Montalbo could only stand on his feet for 20-30 minutes and walk about 20 yards, and could only sit for about 15 minutes.  AR 24.  According to the ALJ, Montalbo testified that he needed help with dressing himself and had difficulty bending down, but also that he could carry laundry and shop twice a month for up to an hour.  AR 24-25.  The ALJ credited Montalbo's need for a cane, but did not find the intensity and limiting effects of his symptoms entirely credible.  AR 25.

The ALJ also gave "great weight" to the testimony of Dr. Morse, a non-examining physician because it was "based on the most recent medical evidence, including the claimant's testimony at the hearing."  AR 25.  Dr. Morse testified that the medical evidence did not describe significant motor limitations, but rather just pain issues due to a prior surgery.  AR 25.  The ALJ found that the State Agency medical consultants' conclusion that "the claimant could lift and/or carry 20 pounds occasionally and up to 10 pounds frequently, with occasional

postural limitations," was consistent with Dr. Morse's

testimony, and noted that the consultants had initially

determined Montalbo could stand and walk for 2 hours and upon

reconsideration concluded he could stand and walk for 6 hours.

AR 25.  Montalbo asserts that the ALJ erred in not discussing,

much less giving any weight to, the opinions of four treating or

examining physicians: Dr. Baclig, Dr. Chow, Dr. Lim, and Dr.

Lee.  Opening Br. at 13.

### III.   Medical Opinion Evidence

#### a. **Whether Evidence from Drs. Baclig, Lim, and Chow Constitutes Medical Opinion Evidence**

As an initial matter, the Commissioner argues that the

medical records Montalbo submitted from Drs. Baclig, Lim, and

Chow[3] do not constitute "medical opinion evidence" and therefore

the ALJ did not err by not discussing those records.  Ans. Br.

at 15-18.  The ALJ did not explicitly state in his opinion

whether or not he considered these medical records to be medical

opinion evidence or not.

Under the agency's regulations, "[m]edical opinions

are statements from physicians and psychologists or other

acceptable medical sources that reflect judgments about the

nature and severity of [the claimant's] impairment(s), including

---

[3] The Commissioner apparently does not contest that evidence from
Dr. Lee constitutes a medical opinion.

[the claimant's] symptoms, diagnosis, and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 416.927(a)(2). The Commissioner focuses on the latter part of the regulation's language and argues that medical opinion evidence must "explain[] what a claimant can do despite his or her impairments and physical and mental restrictions." Ans. Br. at 17. However, the Commissioner provides no case law in support of this contention, nor has the Court been able to locate any. Indeed, "the regulations simply state that medical opinions *may* include statements regarding a claimant's limitations or restrictions," not that they *must*. See Parvon v. Colvin, Civ. No. 15-00110 ACK-BMK, 2016 WL 1047992, at *10 (D. Haw. Mar. 11, 2016) (finding a doctor's statement, based on an in-person examination, constituted a medical opinion because it included judgments about the nature and severity of the claimant's impairments) (emphasis added).

Many parts of the record appear to reflect judgments about the nature and severity of Montalbo's impairments, e.g., AR 327 (Dr. Baclig's finding of decreased lumbar spine range of motion); his symptoms, e.g., AR 327 (Dr. Baclig's note that gait was moderately antalgic), AR 309, (Dr. Chow's note that gait was antalgic); and his diagnosis and progress, e.g., AR 413-16 (Dr. Lim's evaluation and treatment plan for low back pain), AR 296

(Dr. Chow's diagnosis), AR 327 (Dr. Baclig's observation that condition was worsening despite treatment).  The Court therefore finds that the medical records of Drs. Baclig, Lim, and Chow constitute medical opinion evidence.[4]  See Parvon, 2016 WL 104799, at *10–11.

### b. Whether the ALJ Improperly Rejected the Medical Opinions of Montalbo's Doctors

Montalbo's first objection to the ALJ's decision is that the ALJ failed to discuss, much less give specific and legitimate reasons for rejecting the opinions of Montalbo's treating and examining physicians: Drs. Baclig, Chow, Lim, and Lee.  Opening Br. at 2, 13.

---

[4] The Commissioner has also argued that the statute explicitly excludes opinions about issues reserved for the Commissioner, such as whether a claimant is disabled or unable to work, from being medical opinions.  Ans. Br. at 15.  Under the regulations, statements such as Dr. Baclig's opinion that "[p]atient is not able to engage in any gainful employment because of radicular back pain," AR 330, do not qualify as a medical opinion evidence.  See 20 C.F.R. § 416.927(d); Ans. Br. at 16.  However, in determining whether Montalbo is disabled, the ALJ may still consider such evidence, as the regulations provide the ALJ "should review all of the medical findings and other evidence that support a medical source's statement that [the claimant is] disabled.  Id. § 416.927(d)(1); see also id. § 416.913(b)(6) (ALJ may consider medical reports containing "[a] statement[] about what [the claimant can still do despite [the claimant's] impairments based on the acceptable medical source's findings").

i. **Standards for Weighing Medical Opinion Evidence**

In assessing whether or not a claimant is disabled, the ALJ must "develop the record and interpret the medical evidence," considering the "combined effect" of all of claimant's impairments, regardless of whether any one impairment, considered alone, would be of sufficient severity. Howard v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003). Ultimately, "it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity." Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001) (citing 20 C.F.R. § 404.1545). The ALJ is not obligated to "discuss every piece of evidence," as long as it is neither significant nor probative. Howard, 341 F.3d at 1012.

"Although a treating physician's opinion is generally afforded the greatest weight in disability cases, it is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability." Ukolov, 430 F.3d at 1004 (quotation marks omitted). A treating physician's opinion should be given controlling weight when it is "supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record." Ghanim v. Colvin, 763 F.3d 1154, 1160 (9th Cir. 2014) (alteration in original). "To reject

an uncontradicted opinion of a treating physician, the ALJ must provide clear and convincing reasons that are supported by substantial evidence." Id. at 1160-61 (internal quotation and citation omitted).

"Even if a treating physician's opinion is contradicted, the ALJ may not simply disregard it." Id. at 1161. Rather, in determining how much weight to afford the treating physician's medical opinion, the ALJ is required to consider factors such as the treatment relationship, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, the supportability of the opinion with medical evidence, and consistency with the record as a whole. Id.; see also 20 C.F.R. § 416.927(c).

An ALJ may only reject a contradicted treating physician's opinion by providing "specific and legitimate reasons that are supported by substantial evidence." Id. An ALJ can meet his burden "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [its] interpretation thereof, and making findings." Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) (finding specific and legitimate reasons for rejecting treating physician's opinion where the ALJ stated that the assessment largely reflected the claimant's self-reported pain, which the ALJ found

- 14 -

was not credible).  "[A]n ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion."  Garrison v. Colvin, 759 F.3d 995, 1012-13 (9th Cir. 2014) (affirming that ALJ failed to offer specific and legitimate reasons where he largely ignored medical treatment and opinion evidence).

Similarly, "[t]he opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician."  Lester v. Chater, 81 F.3d 821, 830 (9th  Cir. 1995).  There must be "clear and convincing reasons for rejecting the uncontradicted opinion of an examining physician" and even if contradicted, the opinion of an examining doctor "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record."  Id. at 830-31.

ii. **Application to the Facts**

The Ninth Circuit has plainly held that an ALJ may not ignore a treating or examining doctor without even mentioning him.  See Marsh v. Colvin, 792 F.3d 1170, 1172-73 (9th Cir. 2015) ("Because a court must give 'specific and legitimate reasons' for rejecting a treating doctor's opinions, it follows

even more strongly that an ALJ cannot in its decision totally ignore a treating doctor and his or her notes, without even mentioning them."); see also Parvon v. Colvin, Civ. No. 15-00110 ACK-BMK, 2016 WL 1047992, at *11 (D. Haw. Mar. 11, 2016) (finding ALJ committed legal error by ignoring the majority of a doctor's medical opinion without explicitly rejecting or discrediting it). Here, the ALJ did not mention the opinions of Drs. Baclig, Chow, Lim, or Lee, much less discuss any of their opinions or findings or provide reasons for rejecting or discrediting those opinions.[5] The ALJ thus erred in ignoring the opinions of these treating and examining physicians.

Even where an ALJ gives reasons for rejecting a treating or examining physician's opinion, the Ninth Circuit has held that such reasons must be sufficiently specific. In Embrey v. Bowen, the Ninth Circuit found that the ALJ failed to provide sufficiently specific reasons for rejecting the conclusions of the claimants' doctors regarding his disability and limitations where the ALJ merely "[s]tated that the objective factors point[ed] toward an adverse conclusion and ma[de] no effort to relate any of these objective factors to any of the specific

---

[5] Though the ALJ specifically rejected a mental health treatment note indicating Montalbo had a slow gait because that observation was not made in an orthopedic or musculoskeletal context, AR 25, that note was not made by any of the doctors whose opinions are at issue here.

medical opinions and findings he reject[ed]."  849 F.2d 418, 422 (9th Cir. 1988); see also Aukland v. Massanari, 257 F.3d 1033, 1037 (9th Cir. 2001) (holding that ALJ erred where he did not explain his conclusion that evidence did not support a significant restriction where the treating physician's opinion, if considered, would have required restrictions).

Here, the ALJ gave great weight to Dr. Morse's testimony solely because it was "based on the most recent medical evidence, including the claimant's testimony at the hearing."  AR 25.  In doing so, the ALJ failed to identify with any specificity what, if any, evidence the other doctors did not have the opportunity to consider and why that justified discrediting or rejecting their opinions.[6]  Thus, even if the ALJ's brief comment can be construed as the reason the ALJ silently rejected all other medical opinion evidence, it is not sufficiently specific as it fails to explicitly link this reason to any other piece of evidence in the record.  See Embrey, 849 F.2d at 422.

The Commissioner argues that the ALJ did not err because he implicitly resolved conflicts in the evidence in forming his opinion.  However this Court is "constrained to

---

[6] Indeed, from this Court's review of the record, it is not readily apparent how Montalbo's testimony at the hearing differed in a significant way from his prior statements in the record.

review the reasons the ALJ asserts;" otherwise "a reviewing court will be unable to review those reasons and without improperly substituting [its] conclusions for the ALJ's or speculating as to the grounds for the ALJ's conclusions." Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015); Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1225 (9th Cir. 2009) ("Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ – not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking."). Though the ALJ might have resolved conflicts in the evidence as the Commissioner suggests, the ALJ's opinion does not discuss any substantive conflicts in the evidence, and this Court may not speculate as to how he resolved any such conflicts.

Similarly, the Commissioner asserts that the opinions of non-treating or non-examining physicians may serve as substantial evidence when they are consistent with independent clinical findings or other evidence in the record. Ans. Br. at 12. However, regardless of whether there is substantial evidence in the record and even assuming the Commissioner's characterization of the record is accurate, see Ans. Br. at 12, the Court has found no authority relieving the ALJ of his burden to explicitly set forth specific and legitimate reasons for

- 18 -

rejecting the opinions of treating and examining physicians. Even the cases the Commissioner cites require that the ALJ set forth specific, legitimate reasons for rejecting the opinions of treating physicians, regardless of whether there is substantial evidence in the record to support the opinions of Dr. Morse and the State Agency medical consultants.[7] See Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002) (affirming ALJ's rejection of opinion of treating physician where its detailed interpretation of medical evidence was supported by substantial evidence); see also Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) (finding ALJ gave sufficient reasons for rejecting medical opinions).

The Court therefore finds that the ALJ erred by improperly rejecting the opinions of Montalbo's treating and

---

[7] The parties also dispute whether the ALJ relied solely on Dr. Morse's testimony or on the opinions of Dr. Morse and the two State Agency medical consultants. See Opening Br. at 14; Ans. Br. at 11-12. However, assuming that the ALJ did rely on the State Agency medical consultants' opinions raises another issue. The only apparent reason why the ALJ appears to have rejected the opinions of Montalbo's doctors is because they were not as recent as Dr. Morse's opinion. However, the two State Agency medical consultants evaluated Montalbo in May and December of 2013, AR 72, 87, and neither heard Montalbo's testimony at the hearing before the ALJ. The same recency concern could thus be applied to the opinions of the medical consultants, and it would be unreasonable for the ALJ to apply that concern to certain medical opinions and not others, at least without further explanation.

examining physicians without providing specific or legitimate reasons for doing so.

### IV. **Whether the ALJ Improperly Discredited Montalbo's Testimony**

Montalbo also asserts the ALJ improperly found his testimony regarding his symptoms not credible.  "In assessing the credibility of a claimant's testimony regarding subjective pain or the intensity of symptoms, the ALJ engages in a two-step analysis."  Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012).  "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."  Id.  "If the claimant has presented such evidence, and there is no evidence of malingering, then the ALJ must give specific, clear and convincing reasons in order to reject the claimant's testimony about the severity of the symptoms."  Id.

"The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints."  Vertigan, 260 F.3d at 1049.  "The fact that a claimant's testimony is not fully corroborated by the objective medical findings, in and of itself, is not a clear and convincing reason for rejecting it."  Id.  In addition, "[a] finding that a claimant's testimony is not credible must be

sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain." Brown-Hunter, 806 F.3d at 493.

Here, the ALJ determined that the "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms," which satisfies the first step of the analysis. AR 25. However, the ALJ concluded that Montalbo's testimony regarding the "intensity, persistence and limiting effects of these symptoms are not entirely credible". Id. In doing so, the ALJ summarized Montalbo's testimony, and noted in particular that Montalbo appeared at the hearing with a cane, which Montalbo admitted was not medically prescribed; Montalbo said he could only stand for 20-30 minutes and walk 20 yards; he could only sit for about 15 minutes; Montalbo stated he needed help with dressing himself and had difficulty bending to put on pants or wash his feet, but he could carry laundry and shop twice a month for up to an hour. AR 24.

The ALJ found that Montalbo's "activities of daily living are not consistent with his allegations of disabling pain and symptoms," and appears to have relied on the fact that Montalbo supposedly said he could carry laundry and grocery shop. AR 24-25. However, while Montalbo reported on his disability application that he could do laundry, he also stated

that he needed help carrying it.  AR 223, 240.  And although

Montalbo confirmed at the hearing that he does go shopping

occasionally, he clarified that he does not usually go by

himself anymore because he experiences pain while walking.  AR

45-46.  Because the ALJ's apparent stated reason for

discrediting Montalbo's testimony is based on an incorrectly

summarized version of the record, it does not constitute a

convincing reason.[8]  See Petty v. Astrue, 550 F. Supp. 2d 1089,

1100 (D. Ariz. 2008) (finding ALJ did not provide clear and

convincing reasons for adverse credibility finding where he

relied on incorrect facts).

In addition, the reason the ALJ discredited Montalbo's

testimony that he can only sit for about 15 minutes is that

"there were no nerve conduction studies or other medical

evidence supporting this fact."  AR 24.  Even if Montalbo's

testimony was not fully corroborated by objective medical

---

[8] In addition, the Ninth Circuit has repeatedly held that "the
mere fact that a plaintiff has carried on certain daily
activities, such as grocery shopping...does not in any way
detract from her credibility as to her overall disability."
Vertigan, 260 F.3d at 1050.  Indeed, in Vertigan, the court
found that the claimant's "physical activities did not consume a
substantial part" of her day, the activities were "not
necessarily transferable to the work setting with regard to the
impact of pain," and the claimant's "constant quest for medical
treatment pain refuted" a finding that she lacked credibility.
Id.  Similarly here, the Court has doubts that being able to
shop twice a month and do laundry with help necessarily
indicates an activity level transferable to a work setting.

findings, that would not constitute a clear and convincing reason for rejecting it.  See Vertigan, 260 F.3d at 1049. Furthermore, evidence in the record actually supports Montalbo's testimony.  Even one of the State Agency medical consultants noted that Montalbo was only able to sit for 15 minutes and had to stand up at intervals during the 45 minute interview.  AR 67. This is also consistent with what Dr. Baclig observed.  See AR 369.  Thus, the reason that the ALJ provided for discrediting Montalbo's testimony is not clear and convincing.

Finally, the ALJ did not clearly reject Montalbo's testimony regarding his limitations regarding how long he can stand and sit, how far he can walk, and whether he needs to use a cane.  Rather, the ALJ felt that the RFC he adopted fully addressed all of these issues.  AR 24.  The RFC requires Montalbo to be able to stand and/or walk 4 hours in total and to be able to sit 6 hours total in a workday.  AR 24.  However, Montalbo testified that he spends half the day lying down, interspersed with periods of sitting and standing and/or walking.  AR 52.  Montalbo also testified that he could not stand for six hours; at most he would be able to stand for 20-30 minutes.  AR 51.  He could sit for about 15 minutes, unless he had been active before sitting, in which case he felt he would only be able to sit for 5 minutes.  AR 52.  The ALJ silently

disregarded this testimony without giving a reason why it was not credible.

The Commissioner argues that the ALJ found that the medical evidence did not corroborate Plaintiffs' allegations about the nature and severity of his symptoms and physical limitations, which constitutes a sufficiently specific reason. Ans. Br. at 21-22.  The Court disagrees; this generic blanket statement does not sufficiently explain what specific testimony the ALJ found not credible such that this Court can adequately review the ALJ's findings.  See Brown-Hunter, 806 F.3d at 493-94 (finding legal error where "ALJ failed to identify the testimony she found not credible [and] did not link it to particular parts of the record supporting her non-credibility determination."); Vasquez v. Astrue, 572 F.3d 586, 592 (9th Cir. 2008) (finding ALJ did not provide specific, clear and convincing reasons for finding claimant not credible where it vaguely concluded that the claims were "not consistent with the objective medical evidence.").

Nor do the cases that the Commissioner cites support finding otherwise.  See Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999) ("The ALJ pointed to specific evidence in the record - including reports by [named doctors] - in identifying what testimony was not credible and what evidence undermined [the claimant's] complaints."); Rollins

- 24 -

v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (finding the ALJ stated sufficiently specific reasons where he cited to a specific doctor's report that contradicted Plaintiffs' claims). The Court thus concludes that the ALJ improperly discredited Montalbo's testimony by failing to provide sufficiently specific, clear, and convincing reasons, tied to the record, for doing so.

V.  **Harmless Error**

The Court next considers whether the ALJ's errors were harmless.  See Molina, 674 F.3d at 1111 (stating that a court "may not reverse an ALJ's decision on account of an error that is harmless").  "A reviewing court may not make independent findings based on the evidence before the ALJ to conclude that the ALJ's error was harmless."  Brown-Hunter, 806 F.3d at 492. "The burden of showing that an error is harmful normally falls upon the party attacking the agency's determination."  Molina, 674 F.3d at 1111 (quotation marks, citation, and brackets omitted).

"An error is harmless only if it is 'inconsequential to the ultimate nondisability determination'" "or if despite the legal error, 'the agency's path may reasonably be discerned.'" Brown-Hunter, 806 F.3d at 494 (quoting Molina, 675 F.3d at 1115 and Treichler, 775 F.3d at 1099) (finding that because the ALJ did not provide any reasons upon which her conclusion was based,

- 25 -

the agency's path could not be reasonably discerned).  The Ninth

Circuit has indicated that in order to consider an error

harmless, the reviewing court must be able to "confidently

conclude that no reasonable ALJ, when fully crediting the

testimony, could have reached a different disability

determination." Marsh v. Colvin, 792 F.3d 1170, 1173 (9th Cir.

2015) (finding failure to even mention physician's opinion not

harmless).

     Montalbo asserts that the ALJ ignored medical opinion

evidence supporting his limited functional abilities due to

spinal pain.  Opening Br. at 15-16.  The Commissioner argues

that the observations of these physicians are not probative, so

the ALJ did not err by not discussing them.  Ans. Br. at 18-19.

Medical opinions that conflict with the ALJ's findings are

considered significant and probative.[9] See Stewart v. Astrue,

---

[9] The Commissioner also argues that Dr. Baclig's and Dr. Lim's
statements are not probative because they do not indicate the
duration of Montalbo's limitations, and thus fail to show that
Montalbo's impairment would be "expected to last at least twelve
months or result in death," as required for a qualified
disability.  Ans. Br. at 19.  Montalbo filed for SSI benefits on
March 15, 2013.  See AR 20, 63; Ans. Br. at 1 n.1.  The record
shows that Dr. Baclig noted pain, an antalgic gait and decreased
range of motion, aggravated by lifting, bending, and prolonged
sitting as early as December, 2012, AR 326-27, and these issues
continued through 2013, see, e.g., AR 334 (Dr. Baclig's July 12,
2013 report), and into the fall of 2014, see, e.g., AR 369 (Dr.
Baclig's Sept. 12, 2014 report), AR 376-77 (Dr. Baclig's May 23,
2014 report), AR 413-15 (Dr. Lim's July 12, 2014 report).
Because this evidence, read in light of the record as a whole,
                                        (Continued...)

No. C12-99, 2012 WL 4089650, at *7 (W.D. Wash. Aug. 27, 2012) (finding that where treating physicians' opinions directly conflicted with ALJ's findings, they constituted significant and probative evidence that could only be rejected by specific and legitimate reasons).

The Commissioner appears to concede that there may be a conflict in the medical evidence. See Ans. Br. at 20 (discussing deference to ALJ's resolution of conflicts in the evidence). The Court also finds that parts of the record, if credited, could suggest a more restrictive RFC than the ALJ found. Several of Dr. Chow's reports note that Montalbo's pain is worsened by sitting, standing, and walking, and improved by lying down. AR 295, 308. Dr. Baclig also concluded that Montalbo's pain is aggravated by lifting, bending, and prolonged sitting, AR 326, and that he is unable to sit longer than 5-10 minutes. AR 369, 395. Because at least some of the opinions of Montalbo's doctors conflict with the ALJ's findings, the Court concludes that they are significant and probative, and the ALJ was required to set forth specific and legitimate reasons for rejecting them. Furthermore, because this Court cannot reasonably discern the path the ALJ followed in weighing the

_____

supports that Montalbo's impairments have existed for at least twelve months after he filed his application for disability benefits, it is probative.

evidence and cannot confidently state that no reasonable ALJ
would reach a different conclusion, this Court finds the ALJ's
implicit rejection of the opinions of Drs. Baclig, Lim, Lee, and
Chow not harmless.

Similarly, the Court does not find harmless the ALJ's
failure to provide specific, clear, and convincing reasons to
discredit Montalbo's testimony.  Because the ALJ's understanding
of the facts was incorrect and because the ALJ failed to
sufficiently explain why it found significant portions of
Montalbo's testimony not credible, this Court cannot confidently
conclude that no ALJ could have reached a different conclusion.
If credited, Montalbo's testimony about how much of each day he
spends lying down and his limited ability to shop and do laundry
could suggest a more restrictive RFC.

Nor does the fact that the RFC the ALJ gave was more
restrictive than the ones Dr. Morse and the State Agency medical
consultants recommended, Ans. Br. at 14, render the ALJ's errors
harmless.  Had the ALJ considered some or all of the evidence
from Montalbo's doctors or credited Montalbo's own testimony,
the ALJ might have given an RFC even more restrictive than the
one given in his decision, which may have led to a finding that
Montalbo was disabled because there is no other work he can

perform.[10]  <u>See, e.g.</u>, <u>Crose v. Colvin</u>, No. C12-5590, 2014 WL

118937, at *6 (W.D. Wash. Jan. 13, 2014) (holding that failure

to provide specific and legitimate reasons for rejecting

physician's opinion not harmless where crediting opinion would

have led to a more restrictive RFC); <u>Brumfield v. Astrue</u>, No. CV

10-6690, 2011 WL 1898305, at *4 (C.D. Cal. May 19, 2011)

(finding failure to properly discount claimant's testimony not

harmless where ALJ could reasonably have reached a more

restrictive RFC assessment if testimony could not be

discredited).

### VI.   Whether the ALJ Improperly Determined Significant Numbers of Jobs Exist at Step 5

Montalbo additionally argues that the ALJ incorrectly

determined that the jobs Montalbo is allegedly able to perform

exist in significant numbers.  Opening Br. at 23.  First,

Montalbo argues that the hypothetical posed to the vocational

expert did not include all of his restrictions, and second that

the jobs identified do not exist in sufficiently significant

---

[10] Montalbo also asserts that the ALJ mischaracterized Dr.
Morse's recommended RFC and that the RFC was only based on
Montalbo's hepatitis condition and not on any spine-based
restrictions, and thus the ALJ erred in giving Dr. Morse's
recommended RFC weight.  Opening Br. at 13-14.  Although
Montalbo's assertions appear to be correct, <u>see</u> AR 49, the ALJ
adopted a more restrictive RFC than the one Dr. Morse
recommended.  The ALJ's error in this respect is therefore
harmless.

numbers for the ALJ to be able to find Montalbo disabled at step five.

### a. **Whether the Hypothetical Posed to the Vocational Expert Was Proper**

At step five, the Commissioner has the burden "to demonstrate that the claimant is not disabled and can engage in work that exists in significant numbers in the national economy." Hill v. Astrue, 698 F.3d 1153, 1161 (9th Cir. 2012). "The ALJ may meet his burden at step five by asking a vocational expert a hypothetical question based on medical assumptions supported by substantial evidence in the record and reflecting all the claimant's limitations, both physical and mental, supported by the record." Id. "If a vocational expert's hypothetical does not reflect all the claimant's limitations, then the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy." Id. at 1162. "Unless the record indicates that the ALJ had specific and legitimate reasons for disbelieving a claimant's testimony as to subjective limitations such as pain, those limitations must be included in the hypothetical in order for the vocational expert's testimony to have any evidentiary value." Embrey, 849 F.2d at 422.

Here, the ALJ asked the vocational expert about a hypothetical 49 year old worker with a 12th grade education who

could lift and carry 20 pounds occasionally and 10 pounds frequently.  AR 57.  The worker could stand and walk for four hours in an eight-hour period, but only for 30 minutes at a time, at which point the person had to be off his feet for 5 minutes.  AR 57-58.  The worker could sit for six hours in an eight hour period, with adjustments every 30 minutes.  AR 58. The worker required the use of a cane and could occasionally balance, stoop, and use stairs, but could not crouch, crawl, or use ladders, ropes, or scaffolds.  AR 58.

As discussed above, the ALJ did not provide specific and legitimate reasons for discrediting Montalbo's testimony regarding his pain and limitations, such as how much of the day he must spend lying down and for how long he can sit. Therefore, those limitations should have been included in the hypothetical; because they were not, the vocational expert's testimony does not have any evidentiary value.  See Embrey, 849 F.2d at 423 (finding vocational expert's opinion had no value where ALJ did not set forth specific and legitimate reasons for rejecting claimant's testimony and did not include limitations in hypothetical).  The ALJ's finding that there are jobs which Montalbo could perform lacks substantial evidence.

### b. **Whether the Jobs Montalbo Could Perform Exist in Significant Numbers**

In the alternative, Montalbo asserts that even if the hypothetical was proper, the numbers of jobs the vocational expert concluded he could perform were not significant enough to conclude he is not disabled.  Opening Br. at 23-24.  The vocational expert concluded that Montalbo could perform three types of jobs, totaling 12,300 jobs nationally: electric parts assembler (5,500 jobs); small parts assembler (1,300 jobs); and solderer, assembler (5,000 jobs).  AR 58-59.

The regulations provide that "work exists in the national economy when it exists in significant numbers either in the region where [the claimant] live[s] or in several other regions in the country."  20 C.F.R. § 416.966(a).  The regulations specifically provide that it does not matter whether "[w]ork exists in the immediate area in which you live," but also note that "[i]solated jobs that exist only in very limited numbers in relatively few locations outside of the region where you live are not considered work which exists in the national economy."  Id. § 416.966(a)(1), (b).  If there are a significant number of jobs either in the region where the claimant resides or in several regions of the country, then an ALJ's finding that the claimant is not disabled must be upheld.  See Gutierrez, 740 F.3d at 523-24.  In addition, a reviewing could should "defer[]

- 32 -

to an ALJ's supported finding that a particular number of jobs in the claimant's region was significant." Id. at 527-28.

The Ninth Circuit has specifically declined to set a bright-line rule for what constitutes a significant number of jobs. Id. at 528. In Gutierrez, the Ninth Circuit concluded that 25,000 nationwide jobs constituted a "close call" but was significant. Id. In doing so, the court noted that the Ninth Circuit had previously held 1,680 jobs to be insignificant, see Beltran v. Astrue, 700 F.3d 386, 390 (9th Cir. 2012), and that the Eighth Circuit had found 10,000 nationwide jobs to be significant, see Johnson v. Chater, 108 F.3d 178, 180 (8th Cir. 1997). Gutierrez, 740 F.3d at 529.

When the jobs available to a claimant number less than 25,000, the conclusions of district courts appear to vary somewhat widely regarding how many jobs need to exist to be significant. Compare, e.g., Baker v. Comm'r of Soc. Sec., 2014 WL 3615497, at *8 (E.D. Cal. July 21, 2014) (finding 14,500 national jobs insignificant) and Valencia v. Astrue, No. C 11-06223, 2013 WL 1209353 at *18 (N.D. Cal. Mar. 25, 2013) (finding 14,082 national jobs insignificant) with Aguilar v. Colvin, No. 1:13-cv-01350, 2016 WL 3660296 (C.D. Cal. July 8, 2016) (finding 11,850 national jobs significant) and Evans v. Colvin, No. ED CV 13-01500, 2014 WL 3845046, at *2-3 (C.D. Cal. Aug. 4, 2014) (finding 6,200 national jobs significant). As the 12,300 jobs

the vocational expert found available to Montalbo falls squarely within the ranges of the foregoing cases, and in light of the discretion afforded to the ALJ in determining whether the number of jobs available is significant, this Court declines to find that the ALJ erred on this ground.[11]

VII.   **Whether the Claim Should Be Remanded**

Finally, Montalbo asks that if this Court agrees that the ALJ erred in rejecting evidence, it should credit such evidence as true, find that Montalbo is disabled, and remand for an immediate award of benefits, or in the alternative to remand to the agency to properly consider the evidence.   Opening Br. at 20-22.

The Ninth Circuit has cautioned that "[a] remand for an immediate award of benefits is appropriate...only in rare circumstances." Brown-Hunter, 806 F.3d at 495 (internal

---

[11] The ALJ also noted that the vocational expert had found that there were less than 10 jobs total in the region of the State of Hawaii available to Montalbo and concluded that such number would not be significant.   AR 27; see also AR 58-59.   This Court agrees that such a small number of jobs in Hawaii would not be significant.   See Beltran, 700 F.3d at 389 (finding 135 regional jobs not significant).   However, even if a court concludes that work available in the claimant's region is not significant, it must still consider whether work exists in significant numbers at the national level.   See Gutierrez, 740 F.3d at 524 ("If we find either of the two numbers 'significant,' then we must uphold the ALJ's decision) (citing Beltran, 700 F.3d at 389-90) (emphasis in original); see also 20 C.F.R. § 416.966(a).   Thus, in light of the ALJ's findings regarding the number of national jobs available, the number of jobs available in Hawaii does not affect the Court's conclusions.

quotation omitted).   In order to award benefits, this Court must conclude: (1) that "the ALJ has failed to provide legally sufficient reasons for rejecting evidence"; (2) that "the record has been fully developed and further administrative proceedings would serve no useful purpose"; and (3) "if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand."   Id.   Even when all three requirements are met, the court retains flexibility in determining the appropriate remedy and may remand if "the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act."   Id. (refusing to remand for award of benefits where "the record raise[d] crucial questions about the extent to which [the claimant's] pain and accompany symptoms render her disabled.").   On the other hand, where "a hearing would simply delay receipt of benefits, reversal [and an award of benefits] is appropriate." McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989) (alteration in original).

As discussed above, the ALJ failed to provide legally sufficient reasons for rejecting medical opinion evidence and Montalbo's own testimony regarding his pain and functional limitations.   However, the Court is not satisfied that further administrative proceedings would serve no useful purpose.   The improperly rejected medical opinion evidence still raises

questions about how Montalbo's pain impacts his functional
limitations.

Dr. Baclig noted on several different occasions that
Montalbo appeared to display exaggerated pain behavior.  <u>See,
e.g.</u>, AR 326, 382; <u>but see</u> AR 324 (noting no evidence of the
same).  In addition, although the record evidences that Montalbo
has at times demonstrated a decreased range of motion, AR 327,
other doctors have noted that he has a normal range of lumbar
motion, AR 415, and, the cause of Montalbo's pain also appears
to be "unclear."  AR 296.  Some doctors also found a positive
straight leg raise test, AR 327, which indicates lower back
issues, while others have noted a negative straight leg raise.
AR 415.  Montalbo's doctors have also at times noted an antalgic
or slow gait, while at other times noted he can walk without
difficulty.  <u>Compare</u> AR 332 <u>and</u> AR 372 ("ambulating without
difficulty") <u>with</u> AR 334 (noting moderately antalgic gait).  The
record suggests that surgery would not alleviate Montalbo's
pain, see AR 335, 400, but his pain appears to be adequately
controlled with medication at times, <u>see</u> AR 305 (improvement by
taking Medrol), and not at others, <u>see</u> AR 327 (worsened
condition despite medication).  Even if this evidence is
credited, these reports are inconsistent and conflict to a
certain extent with Montalbo's own testimony about how
debilitating his pain is.

Thus, while the record may support a finding that Montalbo is not disabled, it also may not.  It is for the ALJ, not the Court, to weigh the inconsistencies in the record in the first instance.  See McAllister, 888 F.2d at 603.  The Court thus finds that it is appropriate to remand to the ALJ for further proceedings, rather than for payment of benefits. Brown-Hunter, 806 F.3d at 496 ("Where there is conflicting evidence, and not all essential factual issues have been resolved, a remand for an award of benefits is inappropriate."; see also Dominguez, 808 F.3d at 409-10 (remanding in light of "inconsistencies, conflicts, and gaps in the record").

## CONCLUSION

For the foregoing reasons, the Court REVERSES the Commissioner's decision denying Social Security disability benefits and REMANDS to the ALJ for further proceedings consistent with this Opinion.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, February 1, 2017.

_____
Alan C. Kay
Sr. United States District Judge

Montalbo v. Colvin, Civ. No. 16-00306 ACK-RLP, Order Reversing the Decision of the Commissioner of Social Security to Deny Plaintiff Supplemental Social Security Income and Remanding for Further Proceedings.